

1

2

3

O

4

5

6

7

8      UNITED  STATES  DISTRICT  COURT

9      FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

10

11   BEHROOZ DERAKHSHAN,                )        CASE NO. SACV08-1185 AG (RNBx)
                                        )
12              Plaintiff,              )
                                        )
13        v.                            )        ORDER GRANTING MOTION TO
                                        )        DISMISS SECOND AMENDED
14   MORTGAGE ELECTRONIC                )        COMPLAINT & DENYING AS MOOT
     REGISTRATION SYSTEMS, INC.;        )        DEFENDANTS' MOTION TO STRIKE
15   FIRST AMERICAN LOANSTAR            )
     TRUSTEE SERVICES; FIRST            )
16   FRANKLIN FINANCIAL;                )
     DEUTSCHE BANK NATIONAL             )
17   TRUST CO.; AMERICAS                )
     SERVICING CO; and DOES 1           )
18   through 50, inclusive,             )
                                        )
19              Defendants.             )
     _____ )
20

21

22

23        This case, like many others before this Court, involves the sale of an option adjustable-

24   rate mortgage loan.  Pro se Plaintiff Behroooz Derakhshan ("Plaintiff") filed a Second Amended

25   Complaint ("SAC").  Defendants Wells Fargo Bank, N.A., d/b/a America's Servicing Co.

26   ("ASC"), Deutsche Bank National Trust ("Deustche Bank"), and Mortgage Electronic

27   Registration Systems, Inc. ("MERS") (collectively, "Defendants") have filed a Motion to

28   Dismiss the SAC ("Motion") and a Motion to Strike the SAC.  After considering all papers and

arguments submitted, the Court GRANTS Defendants' Motion to Dismiss, and DENIES as moot Defendants' Motion to Strike.

**BACKGROUND**

The following facts are taken from Plaintiff's Second Amended Complaint ("SAC"), and for the purposes of this Motion are accepted as true.

On June 12, 2006, Plaintiff Behrooz Derakhshan ("Plaintiff") executed an "Adjustable Rate Note" promising to pay Defendant First Franklin Financial Corporation ("Defendant First Franklin") $783,200 by monthly payment commencing August 1, 2006.  (SAC ¶ 12.)  The loan was a variable interest loan.   (SAC ¶ 26.)  To get a loan to purchase property, Plaintiff went to Defendant Andrew Cano ("Defendant Cano") at Defendant Service First Group ("Defendant Service First"), who acted as a dual agent for Plaintiff.   (SAC ¶ 13.)  Plaintiff "perceived his relationship with Defendant Cano as being very close," and Plaintiff  "relied on Defendant Cano's financial advice."  (SAC ¶ 14.)  Plaintiff  "relied on Defendant Cano's advice concerning" Plaintiff's use of the property as a "commercial/residential property for the care of the elderly as a basis for entering into the loan agreement" with Defendant First Franklin.   (SAC ¶ 15.)

Defendant Cano "represented to Plaintiff that Plaintiff would only be able to finance the [property] as a commercial property, which had an interest rate approximately two percent higher than a standard residential loan."   (SAC ¶ 16.)  "Defendant Cano was aware that Plaintiff's income would not support the loan," and told Plaintiff that "the lender would not approve the loan unless there was a twenty percent down payment."   (SAC ¶ 16-17.)  To get the loan, Defendant Cato "convinced Plaintiff to enter into a high interest rate loan agreement with the sellers, [Defendants Teofil Oros and Mariana Oros (collectively "Oros Defendants")], for an interest only Second Trust Deed for half of the down payment."   (SAC ¶ 17.)

The Oros Defendants gave $30,000 to Plaintiff "to induce Plaintiff to enter into the purchase transaction with the full knowledge and approval of all of the other defendants."

1 | (SAC ¶ 18.)

2 |      Defendant Cano "misrepresented that the property would support payment of the loan

3 | through rents charged to elderly residents."  (SAC ¶ 19.)   Defendant Cano also "misrepresented

4 | to Plaintiff that the value of the [property] would continue to increase and that he could secure

5 | for Plaintiff refinancing of the [property] within six months at a lower interest rate."  (SAC ¶

6 | 19.)  "Defendant Cano, the lender's appraiser, and the sellers misrepresented that the [property]

7 | was worth several hundred thousand dollars more than it actually was."  (SAC ¶ 19.)  Defendant

8 | Cano's alleged misrepresentations were made "on behalf of, and with the support, approval and

9 | at the request of each of the other Defendants, and such misrepresentations were subsequently

10 | ratified by the other Defendants, and each of them."  (SAC ¶ 20.)   Plaintiff relied on the alleged

11 | misrepresentations in entering into the loan.  (SAC ¶ 20.)

12 |      "When Plaintiff sat down with the escrow agent to sign the loan documents and

13 | disclosures, the escrow agent did not explain the documents, and simply presented Plaintiff with

14 | a several inches thick stack of documents to sign." (SAC ¶ 28.)  The escrow agent "never

15 | informed Plaintiff when the right to cancel expired, how to cancel, or where to cancel."  (SAC ¶

16 | 28.) "Plaintiff alleges that the Defendants . . . never explained the workings of the rate, how it

17 | was computed, or its inherent volatility."  (SAC ¶ 30.)

18 |      Plaintiff executed a Deed of Trust securing the loan on June 12, 2006.  (SAC ¶ 33.)  The

19 | deed named First Franklin as the lender and MERS as the beneficiary.  (SAC ¶ 33.)  The deed

20 | was recorded and named Stewart Title Company as trustee.  (SAC ¶ 40.)  Later, a substitution of

21 | trustee was filed with the Orange County Recorder, and First American Loanstar Trustee

22 | Services ("First American") was named as trustee.  (SAC ¶ 41.)  On December 1, 2006, Plaintiff

23 | received a "Mortgage Loan Statement" from ASC that included a coupon for payment with a

24 | mailing address for ASC.  (SAC ¶¶ 42-43.)

25 |      On July 9, 2007, "an unknown employee of First American" executed "on behalf of

26 | Defendant MERS as Beneficiary" a Notice of Breach and Default and of Election to Cause Sale

27 | of Real Property Under Deed of Trust ("Notice of Default").  (SAC ¶ 47.)  Plaintiff alleges that

28 | Defendants MERS, First American, First Franklin, Deutsche Bank, and ASC "each claimed an

1   interest in Plaintiff's Note and Mortgage, and have claimed that they were entitled to the

2   payments" at "all times relevant" to this action.  (SAC ¶ 50.)

3          On January 22, 2009, this Court granted Defendants' motion to dismiss Plaintiff's

4   original Complaint ("January 22 Order").  This Court then granted Defendants' motions to

5   dismiss Plaintiff's First Amended Complaint on June 29, 2009 ("June 29 Order").  Plaintiff has

6   now filed a Second Amended Complaint, bringing nine claims against Defendants, numbered as

7   follows: (1) deceit; (2) unfair business practices under Cal. Bus. & Prof. Code § 17000, *et seq*.

8   ("UCL"); (3) violations of the federal Racketeer Influenced and Corrupt Organizations Act

9   ("RICO"), 18 U.S.C. §§ 1961-68; (4) violations of the Truth in Lending Act ("TILA"), 15

10  U.S.C. § 1611, *et seq.*; (5) violations of the Real Estate Settlement Procedures Act ("RESPA"),

11  26 U.S.C. § 2605, *et seq.*; (6) violations of the Fair Debt Collection Practices Act ("FDCPA"),

12  15 U.S.C. § 1692, *et seq.*; (7) breach of fiduciary duty; (8) injunctive relief; and (9) declaratory

13  relief.

14

15  **LEGAL STANDARD**

16

17         A court should dismiss a complaint when its allegations fail to state a claim upon which

18  relief can be granted.  FED. R. CIV. P. 12(b)(6).  A complaint need only include "a short and plain

19  statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

20  "'[D]etailed factual allegations' are not required."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

21  (May 18, 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007)).  The Court

22  must accept as true all factual allegations in the complaint and must draw all reasonable

23  inferences from those allegations, construing the complaint in the light most favorable to the

24  plaintiff.  *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

25         But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim

26  that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  "A

27  claim has facial plausibility when the pleaded factual content allows the court to draw the

28  reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at

1940 (citing *Twombly*, 550 U.S. at 556).  A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Iqbal*, 129 S. Ct. at 1940, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment.  *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

"A *pro se* litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (internal quotation omitted).

## PRELIMINARY MATTERS

To support their motion, Defendants request that the Court take judicial notice of several documents.  Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Facts subject to judicial notice may be considered on a motion to dismiss.  *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

Defendants request that the Court take judicial notice of five documents recorded in the official records of the Orange County Recorder's Office: (1) an April 26, 2006 Grant Deed; (2) a June 6, 2006 Deed of Trust; (3) a July 9, 2007 Notice of Default and Election to Sell Under Deed of Trust; (4) a September 20, 2007 Assignment of Deed of Trust; and (5) an October 11, 2007 Notice of Trustee's Sale.  The Court finds that these documents meet the requirements of Rule 201, and Defendants' request for judicial notice is GRANTED as to those five documents.

**ANALYSIS**

**1.      PLAINTIFF'S FIRST CLAIM FOR DECEIT**

Plaintiff's first claim is brought against all defendants for "deceit," which Plaintiff also calls "fraud."  The elements of a fraud claim are: (1) a misrepresentation; (2) knowledge of the falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage.  *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1996).  Plaintiff's fraud claim fails.

Plaintiff admits that Defendants moving here did not commit the alleged misrepresentations.  (Opposition to Defendants' Motion ("Opposition") 4:14-15.)  Instead, Plaintiff relies on the theory that Defendants "subsequently ratified the earlier misrepresentations."  (Opp'n 4:16-17.)  But the allegations in the SAC and Opposition do not support this theory.  Plaintiff alleges the misrepresentations, but does not allege sufficient facts to allow the Court "to draw a reasonable inference" that Defendant later ratified those misrepresentations.  *Iqbal*, 129 S. Ct. at 1940.  Defendants' Motion to Dismiss is GRANTED as to Plaintiff's first claim for deceit.

**2.      PLAINTIFF'S SECOND CLAIM FOR UNFAIR BUSINESS PRACTICES**

Plaintiff's second claim is brought against all defendants for unfair business practices. California Unfair Competition Law ("UCL") makes unlawful business practices actionable.  Cal. Bus. & Prof. Code § 17200, *et seq.*  "The UCL defines unfair competition as any unlawful, unfair or fraudulent business practice. . . .   In effect, the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL."  *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999).  Plaintiff's UCL claim is based on Defendants' alleged "false representations, unlawful transfers of the [property], failure to record real property transfers and

1   predatory lending practices." (Compl. ¶ 59.)  These allegations are "mere conclusory statements"

2   that cannot withstand a motion to dismiss.  *Iqbal*, 129 S. Ct. at 1940.  The Court is dismissing

3   Plaintiff's eight other claims, so Plaintiff cannot point to an underlying unlawful practice.  (See

4   Section 1, *supra*, and Sections 3-9, *infra*.)  Further, Plaintiff's claim that Defendants failed to

5   "record real property transfers" is contradicted by the assignment that was, in fact, recorded.

6   (Defendants' Request for Judicial Notice ("RJN"), Exh. D.)

7          Defendants' Motion to Dismiss is GRANTED as to Plaintiff's second claim for unfair

8   business practices.

9

10  **3.      PLAINTIFF'S THIRD CLAIM FOR RICO VIOLATIONS**

11

12         Plaintiff's third claim is brought against all defendants for violations of RICO.  Plaintiff

13  did not bring a RICO claim in his Complaint or FAC.

14         Plaintiff alleges that all Defendants "are involved in the conduct of an enterprise through

15  a pattern of racketeering activity" and "are ongoing business entities which were and continue to

16  be engaged in acts of predatory lending with the intent to wrongfully and fraudulently deprive

17  victims of their money and property."  (SAC ¶ 63.)  Plaintiff further alleges that in engaging in

18  those "acts and ommissions, Defendants, and each of them, engaged in wire fraud and mail

19  fraud, used the Internet, and the Mortgage Electronic Registration System in order to commit

20  such frauds, deceits, and acts of predatory lending."  (SAC ¶ 63.)

21         To state a civil claim under RICO, a plaintiff must plead that the defendant violated the

22  Act, and that the plaintiff was injured as a result of the violation.  "The elements of a civil RICO

23  claim are simple enough: (1) conduct (2) of an enterprise (3) through a pattern (4) of

24  racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's "business or

25  property."  *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c),

26  1962(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985))

27         "Leaving aside the other elements of a civil RICO claim, RICO imposes civil and

28  criminal liability on organizations engaged in 'racketeering activity.'" *Sosa v. DIRECTV, Inc.*,

1   437 F.3d 923, 939 (9th Cir. 2006) (citing 18 U.S.C. §§ 1962-1964).  "Racketeering activity, in

2   turn, is defined to include a number of generically specified criminal acts as well as the

3   commission of one of a number of listed predicate offenses."  *Id.* (citing U.S.C. § 1961(1)).

4   Plaintiff asserts that "predatory lending with the intent to fraudulently deprive the victims,

5   including Plaintiff, of their money and real property" is the predicate offense in this case.

6   (Opp'n 10:13-15.)  "Predatory lending" by a mortgage company is not a listed predicate offense

7   under U.S.C. Section 1961(1), and Plaintiff cites no authority for using "predatory lending" as a

8   predicate offense.  Plaintiff has not alleged sufficient facts that could allow the Court to draw an

9   inference that a predicate act has occurred.  Plaintiff's third claim for violations of RICO fails.

10

11   **4.      PLAINTIFF'S FOURTH CLAIM FOR TILA VIOLATIONS**

12

13          Plaintiff's fourth claim is brought against all defendants for TILA violations.  Plaintiff

14   alleges that Defendants violated TILA by: (1) refusing and continuing to refuse "to validate or

15   otherwise make a full accounting and the required disclosures as to the true finance charges and

16   fees;" (2) improperly retaining funds belonging to Plaintiff "in amounts to be determined;" (3)

17   failing to disclose the status of the ownership of the loans; and (4) failing to provide the required

18   notice of right to rescind in the loan documents.  (SAC ¶ 68.)  Plaintiff requests compensatory

19   damages, attorney fees, punitive damages, and statutory damages.  (SAC ¶ 69-71.)  Plaintiff's

20   TILA claim fails.

21          An action for damages under TILA must be brought within one year of the alleged

22   violation.  15 U.S.C. § 1640(e).  The violation occurs upon consummation of the loan.

23   *Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1258 (D. Colo. 2004).  A

24   loan is deemed consummated at "the time that a consumer becomes contractually obligated on a

25   credit transaction."  12 C.F.R. § 226.2(a)(13).  In its January 22 Order, the Court dismissed

26   Plaintiff's claim for damages under TILA as time-barred, finding that under the facts alleged by

27   Plaintiff, the loan in this case was consummated on June 12, 2006, more than one year before

28   this action was filed on August 4, 2008.  (Jan. 22 Order 5:6-9.)  Plaintiff's TILA claim for

1    damages in the FAC was also dismissed because it was time-barred.  (June 29 Order 5:20-21.)

2    Plaintiff's SAC admits that the loan transaction was consummated on June 12, 2006.  (SAC ¶

3    66.)  The limitations period for any damage claim under TILA expired on June 12, 2007, and

4    Plaintiff did not file this lawsuit until August 4, 2008.  Plaintiff's claim for damages under TILA

5    is time-barred.

6         Plaintiff asks the court to apply the "equitable tolling" doctrine.  (Opp'n 5:14-6:9.)

7    Before the Court can apply equitable tolling, Plaintiff has the burden of showing the following

8    elements: "fraudulent conduct by the defendant resulting in concealment of the operative facts,

9    failure of the plaintiff to discover the operative facts that are the basis of its cause of action

10   within the limitations period, and due diligence by the plaintiff until discovery of those facts."

11   *Sagehorn v. Engle*, 141 Cal. App.4th 452, 460-61 (2006)  (citing *Federal Election Com'n v.*

12   *Williams* 104 F.3d 237, 240-41(9th Cir.1996)).  Plaintiff alleges that he "did not discover the

13   facts underlying his TILA, RESPA and Fair Debt Collection Causes of action until the summer

14   of 2008."  (SAC ¶ 29.)  Plaintiff also alleges that Defendant First Franklin's "trickery,

15   concealment and silence caused a delay in discovering" the alleged violations, (SAC ¶ 28), and

16   that Defendants Cano and Service assured him that they would help him refinance the original

17   loan six months after the close of escrow.  (SAC ¶ 29).  But Plaintiff does not allege sufficient

18   facts to show that he exercised due diligence until discovery of those facts.  The equitable tolling

19   doctrine does not apply here.

20        Defendants' Motion to Dismiss is GRANTED as to Plaintiff's fourth claim for TILA

21   violations.

22

23   **5.    PLAINTIFF'S FIFTH CLAIM FOR RESPA VIOLATIONS**

24

25        Plaintiff's fifth claim is brought against all defendants for RESPA violations.  Plaintiff

26   alleges that Defendants violated RESPA by placing loans "for the purpose of unlawfully

27   increasing or otherwise obtaining yield spread fees and sums in excess of what would have been

28   lawfully earned" and by transferring the service contract and its attending duties without the

1    required notice.  (SAC ¶¶ 75-76.)  Plaintiff requests compensatory damages and attorney fees.

2    The Court finds that Plaintiff fails to state a claim under RESPA.

3         Plaintiff's first allegation that Defendants unlawfully increased or otherwise obtained

4    yield spread fees and sums "in excess of what would have been lawfully earned" appears to

5    invoke RESPA's anti-kickback provision.  *See* 12 U.S.C. § 2607.  That provision prohibits the

6    payment and acceptance of a kickback or referral for unearned services on real estate loans.  *Id.*;

7    *see also Perkins v. Johnson*, 551 F. Supp. 2d 1246, 1252 (D. Colo. 2008).  Plaintiff's apparent

8    Section 2607 claim is time-barred.  A claim brought under 12 U.S.C. § 2607 must be brought

9    within one year of the alleged violation.  12 U.S.C. § 2614; *see also Edwards v. First Am. Corp.*,

10   517 F. Supp. 2d 1199, 1204 (C.D. Cal. 2007); *Blaylock v. First Am. Title Ins. Co.*, 504 F. Supp.

11   2d 1091, 1106 (W.D. Wash. 2007).  Under the facts alleged by Plaintiff, the loan in this case was

12   consummated on June 12, 2006, more than one year before this action was filed on August 4,

13   2008.  (*See* SAC ¶66.)  Again, the Court cannot apply the "equitable tolling" doctrine because

14   Plaintiff has failed to allege sufficient factual matter that could lead to an inference that Plaintiff

15   exercised due diligence in discovering the underlying facts.

16        Plaintiff's second allegation that Defendants violated RESPA by transferring the

17   servicing contract and its attending duties without the required notice also fails.  When the

18   servicing of a mortgage loan is transferred, RESPA requires the transferee servicer to notify the

19   borrower of the transfer within a statutorily mandated period of time and forbids imposition of

20   late fees on payments made within 60 days of the transfer.  *See* 12 U.S.C. §§ 2605(a)-(d).  Under

21   RESPA, a plaintiff may recover any "actual damages to the borrower" resulting from the failure

22   to give notice, plus any additional damages the Court may allow "in the case of a pattern or

23   practice of non-compliance" with the statute.  12 U.S.C. § 2605(f)(1).  Here, Plaintiff alleges that

24   he was subject to "improper late fees for payments made within 60 days of the transfer of the

25   note in a sum subject to proof at trial."  (SAC ¶ 32.)  But Plaintiff has failed to allege facts

26   sufficient to show that a transfer of servicing rights has happened.  The beneficiaries of the loan

27   have changed, (RJN Ehxs. B, D), but Defendant ASC has been the only servicer for the life of

28   the loan.  (RJN, Exh. C.)  There has been no transfer of the servicing rights, and therefore no

1    violation of 12 U.S.C. Section 2605, so Plaintiff's RESPA claim fails.

2         Defendants' Motion to Dismiss is GRANTED as to Plaintiff's fifth claim for violations of

3    RESPA.

4

5    **6.    PLAINTIFF'S SIXTH CLAIM FOR FDCPA VIOLATIONS**

6

7         Plaintiff's sixth claim is brought against all defendants for FDCPA violations.  Plaintiff

8    alleges that Defendants failed to respond to Plaintiffs' requests for "validation" of the debt as

9    required by the FDCPA and requests statutory damages.  Plaintiff's FDCPA claim fails.

10        Plaintiff alleges that he "requested that Defendants verify the alleged debt by producing

11   the original Note, but they have failed to do so."  (SAC ¶ 82.)  Plaintiff alleges that this request

12   took place in bankruptcy court, and that he made the request to the attorney for Defendants First

13   Franklin, ASC, and Deutsche Bank, and that the original note was never produced.  (SAC ¶ 82.)

14        Although Plaintiff brings this claim against all defendants, the request for the validation

15   was made only to the attorney for First Franklin, ASC, and Deutsche Bank.  (SAC ¶ 82.)  The

16   FDCPA regulates the conduct of debt collectors.  A "debt collector" is "any person who uses any

17   instrumentality of interstate commerce or the mails in any business the principal purpose of

18   which is the collection of any debts, or who regularly collects or attempts to collect, directly or

19   indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

20   The FDCPA specifically excludes creditors collecting their own consumer debts.  *Id.*  Mortgage

21   loan beneficiaries and servicing companies are not "debt collectors" under the FDCPA.  *See*

22   *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1209 (5th Cir. 1985) ("The legislative history of

23   section 1692a(6) indicates conclusively that a debt collector does not include the consumer's

24   creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in

25   default at the time it was assigned.") (*citing* S.Rep. No. 95-382, 95th Cong., 1st Sess. 3,

26   reprinted in 1977 U.S.Code Cong. & Ad.News 1695, 1698).  Defendants do not fall in the "debt

27   collector" definition, so this claim fails.

28        Defendants' Motion to Dismiss is GRANTED as to Plaintiff's sixth claim for violations

1   of the FDCPA.

2

3

4   **7.     PLAINTIFF'S SEVENTH CLAIM FOR BREACH OF FIDUCIARY DUTY**

5

6           Plaintiff's seventh claim, for breach of fiduciary duty, is brought against Defendants First

7   Franklin, MERS, Cano, Service, and the Oros and their Trust.  Plaintiff alleges that Defendants

8   breached their fiduciary duties to Plaintiff by placing and negotiating loans "without due care to

9   the best interests of Plaintiff or for the protection of his rights" and by "represent[ing] the home

10  to Plaintiff as commercial property even though the house is in a residential area." (SAC ¶ 52.)

11  This claim fails.

12          Under well-settled California law, lenders do not owe fiduciary duties to borrowers.  "The

13  relationship between a lending institution and its borrower-client is not fiduciary in nature."

14  *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n.1 (1991); *see also*

15  *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 476 (1989) (no fiduciary relationship

16  "between a bank and its loan customers"); *Downey v. Humphreys*, 102 Cal. App. 2d 323, 332

17  (1951) ("A debt is not a trust and there is not a fiduciary duty relation between debtor and

18  creditor as such.").  Here, Defendants were creditors who did not, as a matter of law, owe

19  Plaintiff any fiduciary duties.  Plaintiff's fiduciary duty claim must fail.

20          Defendants' Motion to Dismiss is GRANTED as to Plaintiff's seventh claim for breach of

21  fiduciary duty.

22

23  **8.     PLAINTIFF'S EIGHTH CLAIM FOR INJUNCTIVE RELIEF**

24

25          Plaintiffs' eighth claim seeks an order enjoining Defendants from transferring or selling

26  the Note and Deed of Trust, or from foreclosing on the property.  (SAC ¶ 96.)  Plaintiff also

27  seeks a determination as to the "legal rights and obligations of the parties under the Adjustable

28  Rate Note and Deed of Trust."  (SAC ¶ 95.)  Plaintiff's claim fails.

1        Plaintiff fails to adequately allege that an actual controversy exists regarding each party's

2    legal status under the note.  In fact, the documents provided by Defendants make clear each

3    party's role and legal rights under the note.  (RJN Exhs. B-D.)  Plaintiff fails to allege any facts

4    showing that the parties have actually made competing claims for money owed under the note.

5        Defendants' Motion to Dismiss is GRANTED as to Plaintiffs' eighth claim for injunctive

6    relief.

7

8    **9.      PLAINTIFF'S NINTH CLAIM FOR DECLARATORY RELIEF**

9

10        Finally, Plaintiff's ninth claim is for declaratory relief against all Defendants.  Plaintiff

11   requests a court order declaring that: (1) MERS is conducting an unlawful scheme to avoid

12   payment of taxes to the State of California and to hide the status of ownership of real property;

13   (2) MERS has no rights to exercise a legal interest in Plaintiff's loan; (3) MERS is associated

14   with Deutsche Bank and is still claiming an interest in Plaintiff's loan; (4) Plaintiff is the owner

15   in fee simple absolute of the property based on fraud, deceit, and unlawful conduct of all of the

16   Defendants; (5) the proposed Trustee's sale is unlawful; and (6) Defendants have wrongfully

17   interfered with Plaintiff's use and enjoyment of his property.  (SAC ¶¶ 100-05.)

18        The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its

19   jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations

20   of any interested party seeking such declaration." 28 U.S.C. § 2201(a).  For declaratory relief to

21   be appropriate, there must be an actual controversy relating to the legal rights and duties of the

22   parties. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (citing *American*

23   *States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994)).

24        Plaintiff fails to allege specific facts that could lead the Court to make reasonable

25   inferences supporting the requested declarations.  These allegations "are merely conclusory,

26   unwarranted deductions of fact" and "unreasonable inferences" that the Court cannot accept.

27   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal*, 129 S. Ct. at 1940.

28   Plaintiff has not adequately demonstrated an actual controversy relating to the legal rights and

1    duties of the parties in this case.

2          Defendants' Motion to Dismiss is GRANTED as to Plaintiff's ninth claim for declaratory

3    relief.

4

5    **DISPOSITION**

6

7          Defendants' Motion to Dismiss is GRANTED without leave to amend.  The Court

8    DENIES as moot Defendant's Motion to Strike.

9

10   IT IS SO ORDERED.

11   DATED: October 13, 2009

12                                        _____

13                                             Andrew J. Guilford
                                          United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28